## NORTH SIDE BANK & TRUST CO v HENSHAW et

Ohio Common Pleas, Hamilton Co

Decided Oct 5, 1938

John M. McCaslin, Cincinnati, for plaintiff.

Morris & Barbour, Cincinnati, and Carl S Rankin, Cincinnati, for defendants.

### OPINION

By MORROW, J.

This is an action to construe the will of Edgar Cummings, who died on December 13, 1937. The will was admitted to probate and contains the following:

"Item VII. I give and bequeath to my business associate, C. E. Thornell, the option of purchasing 40 shares of my common stock of the Pierson Lumber Co., of Cincinnati, Ohio at its book value, but if such option is exercised by C. E. Thornell, it must be exercised within nine months of the probate of this my last will and testament.

"I hereby authorize and empower my executor hereinafter named, and it shall in the event C. E. Thornell exercises the option to purchase said common stock of the Pierson Lumber Co., transfer to said C. E. Thornell 40 shares of said common stock, and the exercise of such option by said C. E. Thornell shall be binding upon my heirs, executors or administrators."

In its amended petition the plaintiff states the above facts and also that said C. E. Thornell "has exercised said option to purchase said forty shares of common stock of the Pierson Lumber Company as of July 1, 1938."

Plaintiff further states that

"It is in doubt as to the true meaning and effect of said provision in the will in this, to-wit:

"1. What is the true and correct meaning of the words 'at its book value' as used in said provision of said will?

"2. As to what date the book value of said common stock shall be taken and used as a basis for the exercise of said option."

Plaintiff asks that the court construe said Item VII in the respects above set forth.

C. E. Thornell, a defendant in this action, by his answer sets forth his exercise of option as of July 1, 1938, and states that said date is within nine months from the probate of the will of the decedent. He states that:

"He used as a basis for the exercise of said option the book value of said stock of The Pierson Lumber Company as of January 1, 1938, said date being the closing date of the books of said corporation and also the end of the fiscal year for said corporation."

We will take up the second question first. **41 Ohio Juris., par. 522, page 650,** states:

"TIME FROM WHICH WILL SPEAKS.— Formerly the English common law rule was that as to lands a will spoke as of the date of its execution, but as to personalty as of the time of the death of the testator. At the present time a will is generally considered as speaking from the date of the

death of the testator rather than from the date of the execution, unless its language, by fair construction, indicates the contrary intention. In some cases, however, it may speak from the date of the execution." (Citing cases).

This property referred to in Item VII is personal property, and when the testator speaks of giving and bequeathing the option of purchasing forty shares of stock to C. E. Thornell, he is talking about personal property. The testator, therefore, considered he was giving, by will, to his associate, something of value, like any other bequest, and, because of the exercise of the option by Mr. Thornell, it can be assumed that the bequest of the option was of value.

By a fair construction it cannot be said that the testator intended his will to speak from the date of execution of the same, namely, February 23, 1934; but rather that the will should be considered as speaking from the date of his death. It would hardly seem reasonable that the testator intended to give and bequeath to his business associate an option to purchase stock at a book value as of February 23, 1934, when his future span of life might be counted in decades rather than in years or months as far as he knew.

We are holding therefore that this is a case in which the general rule ▆▆▆▆▆▆ ▆ applies and the will speaks as from the date of the death of the testator as to this bequest.

The memorandum of counsel for defendant, Dorothy Cummings Henshaw, states that there appears to be no abstract definition of "book value" in any Ohio cases. In Vol. 9, Corpus Juris, page 138, the definition of "book value" is as follows:

"BOOK VALUE.—As applied to corporation stock, the value as predicated on the market value of the assets of the company after deducting its liabilities."

See the case of Steeg v Leopold Weil Building, etc. Co., 126 La. pp. 101, 112. This case holds that—

"It does not mean any arbitrary or fictitious value that may be entered on the books of the company."

See also Early v Moor, Exrx., 33 American Law Reports, Ann., 362.

In order to arrive at the real value of the shares of stock the courts have emphasized that book figures must be scrutinized carefully. See Doyle v Mitchell, 247 U. S. 179.

A New York court states as follows:

"The 'book value' of capital stock of a corporation is reached by estimating all the assets as they appear on the corporate books and deducting all the liabilities and other matters required to be deducted and taking the balance as the measure of value." Cabble v Cabble, 97 N. Y. Supp., 773, 775, 111 App. Div. 426.

It is our opinion that in this case the testator meant a "book value" which was the result of an honest and careful appraisement of the assets and liabilities of the company. We do not think that he meant an arbitrary "book value" bearing but slight relation to the facts; but one which approached the fair market value of the assets, and contained a fair estimate of the liabilities of the company as of the date of the death of the testator, December 13, 1937.

It is important to note in this connection that the "law of Federal Income Taxation" states (Vol. 5, p. 725) with reference to determination of income taxes that:

"Accurate book values are preferred to retrospective appraisals."

See Alpin J. Cameron, 8 B. T. A., 120.

In short, the book value of the capital stock of a corporation should be the result of an impartial and industrious effort to approximate the assets and liabilities of the corporation, and such a book value was referred to by the testator in this case. We say this in view of the fact that there is no evidence that the book value of the stock as of January 1, 1938, or at any other time, was anything other than the above. There is no claim here that such book value (arrived at upon closing of the books at the end of a fiscal year) is arbitrary, or bears a slight relation to the facts; was not synonymous to the fair market value; was the result of bookkeeping methods employed for the purpose of evading taxes, or is for any other reason inaccurate. Such being the case we are holding as above.

In conclusion, and under the circumstances, we are holding that the use of the book value figures of the company as of January 1, 1938, "as a basis for the exercise

of said option," constitutes a substantial compliance with the terms of the will and. in fact, the most reasonable method possible for exercising said option in view of the deferred action for a construction of the will.

The exercise of said option, therefore, is held to have been performed within the time provided for same by Item VII of the will, and is a valid exercise of said option.

The matter of "Good Will" of this business has been mentioned. It appears that "Good Will" has never been carried on the books of this concern at a valuation and among the assets. It would appear, therefore, that the executor is estopped, or, at any rate, would be confronted with hard difficulties if it made an effort to add a "Good Will" valuation to the list of assets.

However, our failure in this matter to refer to an inclusion of "Good Will" among the assets of the company does not mean an unqualified endorsement of the conservative type of accounting which dictates that "good will" be listed at a nominal value (as, for instance, $1.00), or as in this case, omitted from the list of assets entirely. A list of assets of The Proctor & Gamble Company, for instance, without an estimate of the "Good Will" bound up in the trade name of "Ivory Soap" or "Crisco" would be grossly unfair and improper.